# fIN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# NORTHERN DIVISION

**FLORA THOMAS,**

    **PLAINTIFF,**

**VS.**                                     **CV NO.:**

**SURGE STAFFING, LLC,**

    **DEFENDANT.**                    **JURY TRIAL DEMANDED**

## COMPLAINT

### I. JURISDICTION

1.    This action for injunctive relief and damages is brought pursuant to 28 U.S.C. §§ 1331, 1343(4), 2201, 2202, and 42 U.S.C. § 12101 et seq. This is a suit authorized and instituted pursuant to the Americans with Disabilities Act as amended, 42 U.S.C. § 12101, et seq. (ADA). The jurisdiction of this Court is invoked to secure protection for and to redress the deprivation of rights and Defendant's violation of the Acts and for injunctive relief and damages.

2.    This action for injunctive relief and damages is also invoked pursuant to 28 U.S.C. §§ 1331, 1343(4), 2201 and 2202 and pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq. District Court jurisdiction exists pursuant to 29 U.S.C. §§ 216(b) and 217 and 28 U.S.C. § 1331. The jurisdiction of

this Court is invoked to secure the protection and redress the deprivation of rights secured by the FLSA.

3. Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's Workers' Compensation Retaliatory Discharge claim under Ala. Code § 25-5-11.1.

## II. ADMINISTRATIVE EXHAUSTION

4. At all times relevant to this Complaint, Defendant has employed at least fifteen (15) employees.

5. On January 29, 2025, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC), which raised claims of Retaliation under the Americans with Disabilities Act. (Exhibit A).

6. Plaintiff filed her Charge of Discrimination within 180 days of Defendant's decision to terminate her employment. (Exhibit A).

7. Plaintiff further filed this lawsuit within ninety (90) days after receiving the right-to-sue letter issued by the EEOC. (Exhibit B).

## III. PARTIES

8. At all times relevant to this Complaint, Plaintiff (hereinafter "Plaintiff") has been a resident of Selma, Dallas County, Alabama. Plaintiff performed work for the Defendant in the counties composing the Southern District

of Alabama during the events of this case. Thus, pursuant to 28 U.S.C. § 1391(b), venue for this action lies in the Southern District of Alabama, Northern Division.

9. Defendant Surge Staffing, LLC (hereinafter "Defendant") is a company registered and doing business in the State of Alabama and has sufficient minimum contacts with the State of Alabama that it is subject to service of process in Alabama. Defendant is an entity subject to suit under 28 U.S.C. § 1331, 42 U.S.C. § 12101, *et seq.* and 29 U.S.C. § 201, *et seq.* Therefore, this Court has personal jurisdiction over Defendant.

## IV. STATEMENT OF FACTS

10. Plaintiff hereby incorporates by reference each of the allegations contained in paragraphs 1 through 9 above.

11. Defendant operates as a staffing agency wherein it provides its client companies with employees that serve on a temporary basis in various labor roles.

12. Defendant hired Plaintiff on or about October 14, 2024.

13. When Defendant hired Plaintiff it deducted the cost of her initial background check, initial drug screen, and her company shirt from her first paycheck.

14. Defendant did not provide Plaintiff with access to her paystubs.

15. Defendant hired Plaintiff as a Staffed employee and assigned her to work with Elevation – one of the companies that it is contracted to provide laborers for.

16. As part of Elevation's operations, it manufactures planks that are used to assemble patios.

17. When Defendant assigned Plaintiff to perform labor for Elevation, Elevation assigned Plaintiff to bundle its patio boards.

18. While assigned to bundle Elevations' patio boards, Plaintiff was responsible for pulling the wooden boards off of a conveyor belt, stacking them together on a different platform, securing the stack of boards, labeling the boards, and positioning them to be sold.

19. While bundling Patio Boards on Sunday, November 24, 2024, Plaintiff began to experience a sharp pain in the upper area of her left arm.

20. Plaintiff reported the severe pain she was experiencing in her arm to her Elevation Supervisor.

21. Plaintiff's Elevation Supervisor initially attributed the pain in Plaintiff's arm to her age.

22. At the time Plaintiff reported the severe pain in her arm, she was forty-eight (48) years old.

23. After Plaintiff emphasized that the pain in her arm felt different than typical age-related pain, her Elevation supervisor agreed to notify Defendant of Plaintiff's potential on-the-job injury.

24. Defendant closed its offices from Monday, November 25, 2024 through Sunday, December 1, 2024 for the Thanksgiving Holiday; however, its assigned employees worked for Defendant's client companies pursuant to assigned schedules.

25. From Sunday, November 24, 2024 through Sunday, December 1, 2024, Plaintiff continued to perform manual labor for Elevation while suffering from severe pain in her arm.

26. The severe pain in Plaintiff's arm was triggered each time that she reached for something and each time that she lifted or carried anything.

27. On Monday December 2, 2024, a member of Defendant's staff escorted Plaintiff to Defendant's preferred Medical Provider – Our Town Family Care (hereinafter referred to as "the Family Care clinic").

28. Defendant's staff witnessed Plaintiff's examination at the Family Care clinic.

29. During her examination at the Family Care clinic, the doctor touched the swelling in Plaintiff's arm one time and then made the decision to place her in an arm sling until December 7, 2024.

30. The Family Care clinic's physician also recommended that Defendant assign Plaintiff to work "light-duty" until she was fully released to return to work.

31. When the Family Care clinic placed Plaintiff on "light-duty", Defendant assigned Plaintiff to perform labor at its Selma office.

32. While working in Defendant's Selma office, Defendant primarily assigned Plaintiff to perform clerical tasks such as shredding documents.

33. While working in Defendant's Selma office, Plaintiff requested to view her paystubs.

34. Defendant employs or employed Kelse Moore as the Human Resources Manager for its Selma location.

35. When Plaintiff requested to view her paystubs, Moore's assistant displayed documents on a computer for Plaintiff to view.

36. When Plaintiff reviewed her paystubs, she discovered that Defendant had continued to deduct t-shirts, background checks, and drug screens from her paycheck despite not providing additional shirts or screening services.

37. Plaintiff requested that Defendant provide print-outs of her paystubs that noted each deduction made and her hours worked.

38. Moore's assistant relayed Plaintiff's paystub request to Moore.

39. Moore denied Plaintiff's request for paper copies of her paystubs.

40. On December 7, 2024, Plaintiff returned with a member of Defendant's staff to the Family Care clinic for re-evaluation.

41. On December 7, 2024, the Family Care Clinic released Plaintiff to return to work with no restrictions.

42. The Family Care clinic did not conduct an examination before making the decision to release Plaintiff to return to work.

43. Elevation scheduled Plaintiff to return to work on Wednesday, December 11, 2024.

44. On the night of December 8, 2024, Plaintiff removed her arm sling.

45. When Plaintiff removed her arm sling, she experienced extreme, persistent pain in her arm.

46. The pain in Plaintiff's arm interfered with her ability to sleep during the night of December 8, 2024.

47. In the early hours of December 9, 2024, Plaintiff sought emergency medical care for her arm from Vaughn Regional Medical Center (hereinafter "the Medical Center").

48. On December 9, 2024, the Medical Center determined that the pain in Plaintiff's upper left extremity was caused by a sprain to her left shoulder.

49. The sprain in Plaintiff's shoulder was located directly where the patio boards contact Plaintiff as they came off the conveyor belt.

50. The Medical Center directed Plaintiff to seek further care from an Orthopedic Specialist and to undergo an MRI to assess for other soft tissue damage.

51. After Plaintiff left the Medical Center, she provided Defendant with a copy of her new medical paperwork.

52. When Plaintiff provided Defendant with a copy of her new medical paperwork, she asked what steps she needed to take for Defendant to cover her treatment with the Medical Center and arrange for an MRI with an Orthopedic Specialist.

53. When Plaintiff provided her medical paperwork and sought clarification on the process for obtaining workers' compensation coverage for her care, Moore became visibly angry.

54. Moore demanded to know why Plaintiff sought additional medical care.

55. Plaintiff explained to Moore that after taking off her arm sling, she was in extreme pain that interfered with her ability to sleep.

56. Moore told Plaintiff, "Well we've got nothing to do with this" in response to her request for workers' compensation coverage for her continuing treatment.

57. After Plaintiff left Defendant's Selma office, Moore's assistant telephoned Plaintiff and terminated her employment.

58. Defendant terminated Plaintiff's employment on December 9, 2024.

59. When Defendant terminated her employment, Plaintiff asked Kelse Moore's assistant for the reason.

60. Moore's assistant notified Plaintiff that Defendant terminated her employment because it was experiencing a financial hardship, which required it to lay-off employees.

61. Upon information and belief, Defendant did not terminate any other employees during December 2024.

62. As a result of Defendant's decision to terminate her employment, Plaintiff has been unable to obtain treatment for her on-the-job injury.

63. As of the filing of this Complaint, Plaintiff continues to suffer from persistent pain in her left arm, which is worsened when she reaches, lifts, or carries with her left arm.

## V. COUNT ONE – AMERICANS WITH DISABILITIES ACT – Discriminatory Discharge

64. Plaintiff hereby incorporates by reference each of the allegations contained in paragraphs 1 through 63 above.

65. During November 2024, Plaintiff suffered an on-the-job injury which resulted in a Disability as defined by the Americans with Disabilities Act.

66. Plaintiff's Disability continues to interfere with the major life activities of reaching, lifting, carrying, and periodically sleeping.

67. Defendant was aware that Plaintiff suffered a physical impairment that substantially limited her ability to reach, lift, carry, as compared to the average person in the general population.

68. Defendant terminated Plaintiff's employment on December 9, 2024.

69. Defendant terminated Plaintiff due to an alleged financial hardship.

70. During December 2024, Defendant did not terminate any other employees due to financial hardship.

71. Plaintiff's disability status motivated Defendant's decision to terminate Plaintiff's employment.

72. In violation of the Americans with Disabilities Act, Defendant terminated Plaintiff's employment, in whole or in part, because of her disability.

73. As a result of Defendant's violation of the Americans with Disabilities Act, Plaintiff has been damaged, suffering from a loss of pay and mental anguish.

## VI. COUNT TWO – AMERICANS WITH DISABILITIES ACT – Retaliatory Discharge

74. Plaintiff hereby incorporates by reference each of the allegations contained in paragraphs 1 through 73 above.

75. During November 2024, Plaintiff suffered an on-the-job injury which resulted in a Disability as defined by the Americans with Disabilities Act.

76. Defendant was aware that Plaintiff suffered a physical impairment that substantially limited her ability to reach, lift, carry, as compared to the average person.

77. From December 2, 2024 through December 7, 2024, Defendant provided Plaintiff with reasonable accommodation for her Disability in the form of "light-duty" work at its Selma office.

78. On December 7, 2024, Defendant's preferred physician, without completing a physical examination, released Plaintiff to return to work without restrictions.

79. On December 9, 2024, Plaintiff placed Defendant on notice that she continued to suffer from her disability.

80. Defendant understood Plaintiff's notice to indicate that her injury would continue to require accommodations in the form of "light-duty" and medical care.

81. After Plaintiff notified Defendant of her on-going need for accommodations, Defendant terminated her employment.

82. Defendant terminated Plaintiff's employment on December 9, 2024.

83. Defendant terminated Plaintiff due to an alleged financial hardship.

84. During December 2024, Defendant did not terminate any other employees due to financial hardship.

85. Plaintiff's on-going need for disability accommodations in the form of "light-duty" assignments and medical care motivated Defendant's decision to terminate her employment.

86. In violation of the Americans with Disabilities Act, Defendant terminated Plaintiff's employment, in whole or in part, due to her need for Defendant to accommodate her diability.

87. As a result of Defendant's violation of the Americans with Disabilities Act, Plaintiff has been damaged, suffering a loss of pay and mental anguish.

## VII. COUNT THREE – ALABAMA CODE § 25-5-11.1 – Retaliatory Discharge

88. Plaintiff hereby incorporates by reference each of the allegations contained in paragraphs 1 through 63 above.

89. On November 24, 2024, Plaintiff reported an on-the-job injury and requested medical care.

90. On December 2, 2024, Defendant escorted Plaintiff to its preferred medical provider to care for her on-the-job injury.

91. On December 7, 2024, Defendant again escorted Plaintiff to its preferred medical provider to care for her on-the-job injury.

92. On December 9, 2024, Plaintiff sought further medical treatment to care for her on-the-job injury.

93. On December 9, 2024, Plaintiff notified Defendant of a need for further medical treatment under its workers' compensation plan.

94. On December 9, 2024, Defendant terminated Plaintiff's employment.

95. Defendant terminated Plaintiff due to an alleged financial hardship.

96. During December 2024, Defendant did not terminate any other employees due to financial hardship.

97. Defendant willfully terminated Plaintiff for suffering an on-the-job injury and/or seeking workers' compensation benefits in violation of Alabama Code § 25-5-11.1.

98. As a result of Defendant's retaliation, Plaintiff has been damaged, suffering a loss of pay and mental anguish.

## VIII. COUNT FOUR – FAIR LABOR STANDARDS ACT – Retaliatory Discharge

99. Plaintiff hereby incorporates by reference each of the allegations contained in paragraphs 2, 8-9, 31 through 63 above.

100. During the two years preceding the filing of this Complaint, Defendant was and is an enterprise engaged in commerce or the production of goods in commerce as defined by 29 U.S.C. § 203(s)(1).

101. During the two years preceding the filing of this Complaint, Defendant has been a company wherein two or more employees, including the Plaintiff, are

engaged in interstate commerce and whose employees handle and/or work on goods that have been moved in and/or produced in commerce.

102. Defendant's gross annual volume of revenue exceeded $500,000 per year for the quarters ending on March 31, 2023, June 30, 2023, September 30, 2023, December 31, 2023, March 31, 2024, June 30, 2024, September 30, 2024 December 31, 2024,

103. At all times relevant to this action, Defendant was an employer of Plaintiff as defined by 29 U.S.C. § 203(d).

104. During the two years preceding the filing of this Complaint, Plaintiff was an employee of Defendant as defined by 29 U.S.C. § 203(e)(1).

105. Throughout her employment, Defendant did not provide Plaintiff with access to her paystubs.

106. During early December 2024, Plaintiff discovered that Defendant had made deductions from her payroll checks for expenses that had not occurred.

107. During early December 2024, Plaintiff requested that Defendant provide her with a paper copy of each paystub reflecting her total hours worked and the related deductions for expended costs.

108. On December 9, 2024, Defendant terminated Plaintiff's employment.

109. Defendant terminated Plaintiff due to an alleged financial hardship.

110. During December 2024, Defendant did not terminate any other employees due to financial hardship.

111. Defendant's decision to terminate Plaintiff's employment was motivated, in whole or in part, by Plaintiff's opposition to Defendant's payroll deductions and her request for copies of her paystubs.

112. As a result of Defendant's retaliation, Plaintiff has been damaged, suffering a loss of pay and mental anguish.

## IX. PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully prays for the following relief:

A. Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting in concert with the Defendant and at the Defendant's request from continuing to violate the terms of the Americans with Disabilities Act;

B. Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting in concert with the Defendant and at the Defendant's request from continuing to violate the terms of the Fair Labor Standards Act;

C. Award back pay, together with employment benefits, front pay, compensatory damages (for the ADA claims, FLSA retaliation claim, and the Ala. Code § 25-5-11.1 claims), liquidated damages (for the FLSA retaliation claim),

punitive damages (for the ADA claims and Ala. Code § 25-5-11.1), special damages; nominal damages;

  D. That Plaintiff be granted judgment against Defendant for all reasonable attorneys' fees, costs, disbursements and interest; and

  E. Plaintiff requests that the Court award Plaintiff equitable relief pursuant to 28 U.S.C. § 2201, 42 U.S.C. § 12101, et seq., Ala. Code §25-5-11.1 and 29 U.S.C. § 201, et seq that the actions of Defendant violated the law; and,

  F. Any different or additional relief as may be determined by the Court to which Plaintiff is entitled.

_____
Allen D. Arnold

_____
Whitney Morgan Brown

**OF COUNSEL**:
ALLEN D. ARNOLD, Attorney at Law
6 Office Park Circle, Suite 209
Mountain Brook, AL 35223
T: (205) 252-1550
ada@allenarnoldlaw.com
whitney@allenarnoldlaw.com

**PLAINTIFF REQUESTS TRIAL BY STRUCK JURY**

_____
OF COUNSEL

**DEFENDANT'S ADDRESS:**
Surge Staffing, LLC
c/o Corporation Service Company, Inc.
641 South Lawrence Street
Montgomery, AL 36104